# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Case No. 5-19-04098 |
| COLEEN BURNS | Chapter 13 |
| Debtor | Henry W. Van Eck, C.B.J. |
| | |
| NATASHA CHAPMAN, ADMINISTRATOR OF THE ESTATE OF MAURICE CHAPMAN, DECEASED | |
| Movant | |
| v. | |
| COLEEN BURNS and JACK N. ZAHAROPOULOS, chapter 13 trustee | |
| Respondents | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY WITH THE CONCURRENCE OF COUNSEL FOR THE DEBTOR AND THE CHAPTER 13 TRUSTEE

**AND NOW**, comes Natasha Chapman, Administrator of the Estate of Maurice Chapman, Deceased, ("Movant") herein by and through her undersigned counsel and files the following Motion for Relief from the Automatic Stay and in support thereof alleges:

1.    Movant, Natasha Chapman, is an adult individual with an address of 135B Broadway, Staten Island, NY 10310, and is the surviving parents and Administrator of the Estate of Maurice Chapman, deceased.

2.      Coleen Burns aka Coleen M. Burns ("Debtor") filed a petition for relief to the above term and number pursuant to Chapter 13 of the United States Bankruptcy Code ("Code") on September 25, 2019 ("Filing").

3.      Charles J. DeHart, III, Esquire, was initially the duly appointed Chapter 13 Trustee; however, upon his retirement Jack N. Zaharopoulos was duly appointed as the Chapter 13 Successor Trustee on April 30, 2021, and he is named as a respondent herein.

4.      The Debtor referenced above is a named defendant, with others, in a negligence/wrongful death lawsuit currently pending in the Court of Common Pleas of Luzerne County. The Complaint was filed on behalf of the Movant on October 18, 2021, at No. 2021-10468. A true and correct copy of the Complaint is attached hereto and incorporated herein by reference as **Exhibit "A"**.

5.      The Court of Common Pleas action in Luzerne County (the "state court action") involves a personal injury/negligence/wrongful death claim on behalf of the Movant/Plaintiff arising out of an incident in January of 2021, wherein Movant/Plaintiff was an innocent bystander on the premises of a bar/nightclub known as Bo's On Main, and was shot while on the premises, resulting in injury and ultimately his death.

6.      Movant has been advised that the Debtor has insurance coverage for the claims asserted in the state court action.

7.      The Debtor's Fifth Amended Chapter 13 Plan has been confirmed by Order dated July 2, 2021 (DKT 158).

8.      The Movant seeks to obtain relief from any automatic stay so as to be able to continue to prosecute the state court action and to pursue any insurance coverage applicable to Debtor and/or any other defendants in the state court action for the personal injuries suffered as a result of the claims alleged in **Exhibit "A"**.  The Movant, by doing so, does not release the Debtor or any other defendant from any claim associated with the state court action.

9.      Since the Debtor has filed Bankruptcy, in the event of a settlement, judgment or verdict against Debtor, Movant will not seek to collect any funds or proceeds from the Debtor's personal

assets unless approved by Court order or applicable law.

10.     Movant will limit recovery against the Debtor to all insurance coverage applicable to Debtor in the state court action, thus resulting in no prejudice to the Respondents or the Bankruptcy Estate if relief from the automatic stay is granted.

11.     By virtue of the allegations set forth herein above, sufficient cause exists for relief to be granted from any automatic stay.

12.     Relief from the automatic stay shall not be deemed to be a release of any kind whatsoever and the representations of the Movant herein are specifically conditioned upon the granting of this Motion.

13.     Accordingly, Movant, respectfully requests that she be granted relief from the automatic stay provisions of Section 362(a) of the Bankruptcy Code for the sole purpose of pursuing the personal injury/negligence/wrongful death action and seeking any damages or relief from all insurance coverage applicable in the state court action for any judgment entered against the Debtor in the state court action including any primary, excess and/or umbrella coverage directly or indirectly applicable to Debtor including all insurance coverage applicable to Debtor through any defendant in the state court action based on the professional negligence of Debtor as an agent, servant, employee and/or ostensible agent.

## Analysis of Applicable Law

14.     Upon the filing of a bankruptcy petition, the continuation of judicial proceedings is stayed automatically.  11 U.S.C. § 362(a)(1).

15.     In its discretion, however, the Court may grant relief from the automatic stay "for cause."  11 U.S.C. § 362(d)(1); *see Holtkamp v. Littlefield (In re Holtkamp),* 669 F.2d 505, 508 (7th Cir. 1982).  "Cause" may include allowing a pending action to proceed to a final judgment so that liability may be determined *vis a vis* the debtor.  As noted by one court, "It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from

many duties that may be handled elsewhere." *Jessie v. Honosky (In re Honosky),* 6 B.R. 667, 669 (S.D. W.Va 1980) (quoting S. Rep. No. 95-989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5836).

16.     Many Courts when faced with the decision as to whether to modify the automatic stay to permit non-bankruptcy court litigation to proceed, look to the case of *In Re Curtis, 40 B.R. 795 (Bankr. D. Utah 1984)* for guidance under the twelve so-called "Curtis Factors".   Said factors are applied below to the facts at hand:

a.     **Whether the relief will result in a partial or complete resolution of the issues.**  The underlying negligence/personal injury/wrongful death action will resolve completely the issue of whether the Debtor is liable to the Movant and the amount of damages to which the Movant is entitled.

b.     **The lack of any connection with or interference with the bankruptcy case.**  Because of the existence of insurance coverage for the injury involved, the prosecution of the injury claim will not interfere with administration of the involved case.

c.     **Whether the foreign proceeding involves the debtor as a fiduciary.**  The underlying action does not involve the Debtor acting in a fiduciary capacity.

d.     **Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases.**  This factor has no application to the case at bar other than the fact that the Court of Common Pleas of Luzerne County frequently hears personal injury cases, and the action has been pending in that Court since 2021.

e.     **Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.**  Here the Debtor will not be affected by the outcome of the state court action as an insurance carrier is actively defending this matter and there is insurance coverage in place to pay all or part of the claim in the event the Movant prevails.

f.       **Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.**  In the instant case, the Debtor is the owner of the involved policy of insurance and will neither act as a bailee or conduit with regard to any proceeds of said policy.

g.       **Whether litigation in another forum would prejudice the interests of other creditors, any creditors' committee, and other interested parties.**  In the event the personal injury claim is permitted to proceed, and collection is limited to insurance coverage, it will have no impact on the interests of other creditors.

h.       **Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c).**  This factor has no application to the case at bar.

i.       **Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f).**   This factor has no application to the case at bar as there is insurance coverage in this matter to address any verdict in this matter.

j.       **The interest of judicial economy and the expeditious and economical determination of litigation for the parties.**  Lifting the automatic stay would result in judicial economy and the expeditious and economical determination of the litigation since the state court action is pending and the parties are proceeding with the necessary pre-trial litigation to bring this to a swift trial on the merits.

k.       **Whether the foreign proceedings have progressed to the point where the parties are ready for trial.**  As stated above, the state court action is pending, and the parties are proceeding with the necessary pre-trial litigation to bring this to a swift trial on the merits.

l.       **The impact of the stay on the parties and the "balance of hurt".** The impact to the parties would be negligible since the parties desire to have this matter adjudicated without further delay. Since the state court action is already pending and the parties are

proceeding with pre-trial litigation, further delay imposes a great financial burden on the Movant. Lastly, there would be no impact on the administration of the estate and <u>the Debtor has consented to the relief</u>.

17.     It is clear that upon applying the Curtis Factors to the case at hand, that the Movant has established "cause" for relief from the automatic stay.  11 U.S.C. § 362(d).

**WHEREFORE,** the Movant respectfully requests relief from the automatic stay so as to permit Movant to pursue his state court action against Debtor and to seek recovery against all insurance coverage applicable to Debtor in the state court action including any primary, excess and/or umbrella coverage directly or indirectly applicable to Debtor including all insurance coverage applicable to Debtor through any defendant in the state court action based on the negligence of Debtor as an agent, servant, employee and/or ostensible agent and for any other relief as is just and equitable.

Respectfully Submitted
**Law Offices of Brian E. Manning**
/s/ Brian E. Manning
Brian E. Manning, Esquire
502 S. Blakely, St., Suite B
Dunmore, PA 18512
Tel. 570-558-1126
Fax 866-559-9808
brianemanning@comcast.net
Attorney for the Movant

Dated: November 5, 2021

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Case No. 5-19-04098 |
| COLEEN BURNS | Chapter 13 |
| Debtor | Henry W. Van Eck, C.B.J. |
| | |
| NATASHA CHAPMAN, ADMINISTRATOR OF THE ESTATE OF MAURICE CHAPMAN, DECEASED | |
| Movant | |
| v. | |
| COLEEN BURNS and JACK N. ZAHAROPOULOS, chapter 13 trustee | |
| Respondents | |

## ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**AND NOW,** upon consideration of the Motion of Natasha Chapman, Administrator of the Estate of Maurice Chapman, Deceased, The concurrence of the Debtor and the Chapter 13 Trustee, any responses thereto, and after an opportunity of a hearing, the Court finds that there is presently pending in the Court of Common Pleas of Luzerne County at No. 2021-10061, an action for negligence and wrongful death against the Debtor, Coleen Burns and others, and that the potential exposure of the Defendant/Debtor Coleen Burns arising from such claim is presently covered by a policy or policies of insurance and that further said carrier(s) is/are providing the Defendant/Debtor Coleen Burns with a defense to said claim and providing counsel to the Defendant/Debtor at its expense, now therefore it is hereby

**ORDERED and DECREED** that the Motion of Natasha Chapman, Administrator of the Estate of Maurice Chapman, Deceased, is **GRANTED** and Movant is authorized to proceed with the litigation pending in the Court of Common Pleas of Luzerne County, Pennsylvania against the Defendant/Debtor, Coleen Burns and others on the condition that any recovery against Debtor, by way of a verdict or settlement, shall be limited to any and all insurance coverage available to Debtor in the state court action including any primary, excess and/or umbrella coverage directly or indirectly applicable to Debtor including all insurance coverage which may be available to Debtor through any defendant in the state court action.

By the Court

_____
Henry W. Van Eck, Chief Bankruptcy Judge

Dated:_____

| For Prothonotary Use Only: | |
|---|---|
| Docket No: | 202110468 |

TIME STAMP

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**Commencement of Action:**

☒ Complaint ☐ Writ of Summons ☐ Petition
☐ Transfer from Another Jurisdiction ☐ Declaration of Taking

| Lead Plaintiff's Name: Natasha Chapman, Administrator of the Estate of Maurice Chapman, Deceased | Lead Defendant's Name: Bo's On Main |
|---|---|
| **Are money damages requested?** ☒ Yes ☐ No | Dollar Amount Requested: (check one) ☐ within arbitration limits ☒ outside arbitration limits |
| **Is this a *Class Action Suit*?** ☐ Yes ☒ No | **Is this an *MDJ Appeal*?** ☐ Yes ☒ No |

Name of Plaintiff/Appellant's Attorney: Joshua Van Naarden, Esquire

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your ***PRIMARY CASE.*** If you are making more than one type of claim, check the one that you consider most important.

**TORT** (*do not include Mass Tort*)
☐ Intentional
☐ Malicious Prosecution
☐ Motor Vehicle
☐ Nuisance
☐ Premises Liability
☐ Product Liability (does not include mass tort)
☐ Slander/Libel/ Defamation
☒ Other:
___Negligence___

**MASS TORT**
☐ Asbestos
☐ Tobacco
☐ Toxic Tort – DES
☐ Toxic Tort – Implant
☐ Toxic Waste
☐ Other:
_____

**PROFESSIONAL LIABLITY**
☐ Dental
☐ Legal
☐ Medical
☐ Other Professional:
_____

**CONTRACT** (*do not include Judgments*)
☐ Buyer Plaintiff
☐ Debt Collection: Credit Card
☐ Debt Collection: Other
_____
_____
☐ Employment Dispute: Discrimination
☐ Employment Dispute: Other
_____
_____
☐ Other:
_____
_____

**REAL PROPERTY**
☐ Ejectment
☐ Eminent Domain/Condemnation
☐ Ground Rent
☐ Landlord/Tenant Dispute
☐ Mortgage Foreclosure: Residential
☐ Mortgage Foreclosure: Commercial
☐ Partition
☐ Quiet Title
☐ Other:
_____
_____

**CIVIL APPEALS**
Administrative Agencies
☐ Board of Assessment
☐ Board of Elections
☐ Dept. of Transportation
☐ Statutory Appeal: Other
_____
_____
☐ Zoning Board
☐ Other:
_____
_____

**MISCELLANEOUS**
☐ Common Law/Statutory Arbitration
☐ Declaratory Judgment
☐ Mandamus
☐ Non-Domestic Relations Restraining Order
☐ Quo Warranto
☐ Replevin
☐ Other:
_____
_____

Exhibit "A"

*Updated 1/1/2011*

# VSCPLAW VAN NAARDEN · SPIZER
## CHASE · PINTO

JOSHUA VAN NAARDEN, ESQUIRE
JOHN M. PINTO, ESQUIRE
Attorney ID No: 86740/206213
2001 Market Street, Suite 3700
Philadelphia, PA 19103
(215) 960-0000

*Attorneys for Plaintiff*

| | |
|---|---|
| **NATASHA CHAPMAN, Administrator of the** : <br> **ESTATE OF MAURICE CHAPMAN, DEC'D** : <br> 135B Broadway : <br> Staten Island, NY  10310 : | COURT OF COMMON PLEAS <br> LUZERNE COUNTY |

Plaintiff :

v. :  NO. | 202110468 |

**BO'S ON MAIN** :
215 South Main Street :
Wilkes-Barre PA 18701 :
and :
**CM BURNS 3, LLC** :
243 South Main Street :
Wilkes Barre, PA 18702 :
and :

## NOTICE TO PLEAD

<div style="display:flex">

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

North Penn Legal Services, Inc.
33 North Main Street, Suite 200
Pittston, PA 18640
(570) 299-4100

**ADVISO**

Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ESTA OFICINA LO PUEDE PROPORCIONAR CON INFORMACION ACERCA DE EMPLEAR A UN ABOGADO. SI USTED NO PUEDE PROPORCIONAR PARA EMPLEAR UN ABOGADO, ESTA OFICINA PUEDE SER CAPAZ DE PROPORCIONARLO CON INFORMACION ACERCA DE LAS AGENCIAS QUE PUEDEN OFRECER LOS SERVICOS LEGALES A PERSONAS ELEGIBLES EN UN HONORARIO REDUCIDO NINGUN HONORARIO.

North Penn Legal Services, Inc.
33 North Main Street, Suite 200
Pittston, PA 18640
(570) 299-4100

</div>

**COLEEN M. BURNS**　　　　　　　　　:
c/o CM Burns 3, LLC　　　　　　　　　:
243 South Main Street　　　　　　　　:
Wilkes Barre, PA　18702　　　　　　　:
　　　and　　　　　　　　　　　　　:
**JAYSHAWN MALIK JOHNSON**　　　　:
Inmate/Booking #21-03-217　　　　　　:
c/o Luzerne County Prison　　　　　　　:
99 Water Street　　　　　　　　　　　:
Wilkes Barre, PA　18702　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Defendants　:

202110468

## CIVIL ACTION COMPLAINT

Plaintiff, Natasha Chapman, Administrator of the Estate of Maurice Chapman, deceased, by and through her undersigned counsel, herein complains of the above-captioned Defendants as follows:

1.　　　Plaintiff, Natasha Chapman, is an adult individual, citizen and resident of the State of New York, residing at 135B Broadway, Staten Island, NY 10310.

2.　　　Plaintiff, Natasha Chapman, is the surviving parent and Administrator of the Estate of Maurice Chapman, deceased, having been so appointed by the Register of Wills of Luzerne County, Pennsylvania on October 15, 2021. See Letters of Administration attached as **Exhibit A.**

3.　　　Plaintiff, Natasha Chapman, brings this action as and on behalf of her son's beneficiaries at law under and by virtue of the Wrongful Death Act, 42 Pa. C.S.A. §8301, the Survival Act, 42 Pa. C.S.A. §8302, and the applicable Rules of Civil Procedure and decisional law.

4.　　　Maurice Chapman was a thriving 31-year old adult individual, born on January 9, 1990, and a citizen and resident of the Commonwealth of Pennsylvania residing at 22 Dougher Lane, Wilkes Barre, PA 18702, when he was murdered as a result of Defendants' negligent and reckless conduct, as described herein. Due to the Defendants' negligent and reckless acts that

2

permitted an individual with a loaded firearm on the premises of the bar/nightclub, Bo's On Main, Maurice Chapman was shot on the premises as an innocent bystander, ultimately causing his death. On the date and time this tragic incident occurred, Bo's on Main should have *never* been open and operating as a bar/nightclub and was in violation of state, city and country restrictions/prohibitions for service and consumption of alcohol and gatherings.

5.      Plaintiff, Natasha Chapman, is the sole heir at law of Maurice Chapman.

6.      Notice of the institution of this action, pursuant to Pa.R.C.P. 2205, has been provided to Natasha Chapman, as the beneficiary at law of Maurice Chapman.

7.      Defendant, Bo's On Main ("Defendant Bar"), is a corporation or other jural entity organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 215 South Main Street, Wilkes Barre, PA 18701.

8.      At all relevant times hereto, Defendant Bar regularly conducted the business of selling and dispensing alcohol, liquor, malt and brewed beverages to the public pursuant to a license that was issued by the Pennsylvania Liquor Control Board and regularly conducted a substantial part of its regular business in Luzerne County.

9.      At all relevant times, Defendant Bar acted through its agents, employees and servants, including but not limited to Defendant Corporation and Defendant Owner, bartenders, servers, waitresses, owners, managers, security officers and bouncers, all of whom were acting within the course and scope of their employment and under the authority provided to them by Defendant Bar on January 30, 2021, during the period of time Maurice Chapman and Defendant Johnson were present in Defendant Bar's establishment and after their departure from the establishment.

10.   Defendant, CM Burns 3, LLC ("Defendant Corporation"), is a corporation or other jural entity organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 243 South Main Street, Wilkes Barre, PA 18702.

11.   At all relevant times hereto, Defendant Corporation was the owner of Defendant Bar, acting within the course and scope of its authority provided by Defendant Bar.  Accordingly, Defendant Corporation is vicariously liable to Plaintiffs, as a result of the negligence of Defendant Bar, whose conduct was under the control or right to control of Defendant Corporation and which conduct directly and proximately caused the death of Maurice Chapman.

12.   Defendant, Coleen M. Burns ("Defendant Owner"), is a citizen and resident of the Commonwealth of Pennsylvania, with a principal place of business located at 243 South Main Street, Wilkes Barre, PA 18702.

13.   At all relevant times hereto, Defendant Owner was the owner and manager of both Defendant Bar and Defendant Corporation, acting within the course and scope of her authority provided by Defendant Bar and Defendant Corporation.  Accordingly, Defendant Owner is vicariously liable to Plaintiffs, as a result of the negligence of Defendant Bar and Defendant Corporation, whose conduct was under the control or right to control of Defendant Owner and which conduct directly and proximately caused the death of Maurice Chapman.

14.   At all relevant times hereto, Maurice Chapman was a business invitee of Defendant Bar, pursuant to an invitation extended by Defendant Bar and Defendant Bar's duly authorized agents, representatives, servants, workmen and/or employees, acting within the course and scope of their authority and/or employment, to purchase and consume alcohol, liquor, malt and brewed beverages on their premises.

15.   At all relevant times hereto, Defendants Bar, Corporation and Owner, and their duly authorized agents, representatives, servants, owners, managers, directors and/or shareholders,

4

workmen and/or employees, acting within the course and scope of their authority and/or employment, allowed Defendant Johnson be served alcohol while visibly intoxicated and to carry a weapon onto the premises, and into the establishment of Defendant Bar, where Maurice Chapman was also patronizing on January 30, 2021.

16.    At all relevant times hereto, Defendants Bar, Corporation and Owner, and their duly authorized agents, representatives, servants, owners, managers, directors and/or shareholders, workmen and/or employees, acting within the course and scope of their authority and/or employment, allowed Defendant Johnson access to its invited patrons to commit the violent act of murder.

17.    Defendant Corporation is the holder of the Restaurant Liquor License No. R-7699 LID 72602.

18.    Defendant, Jayshawn Malik Johnson ("Defendant Johnson"), is a citizen and resident of the Commonwealth of Pennsylvania and is currently in the custody of the Luzerne County Sheriff's Department.

19.    At all relevant times hereto, Defendant Johnson murdered Maurice Chapman on the premises of Defendant Bar.

20.    The deaths of Maurice Chapman resulted solely from the negligence of Defendants herein and was due in no manner whatsoever to any act or failure to act on the part of Maurice Chapman for which he can be deemed to be contributorily liable under Pennsylvania law.

21.    The injuries described herein are a direct result of the negligence of all Defendants, jointly and severally, including their agents, servants and/or employees.

22.    This Court has jurisdiction over this dispute pursuant to 42 Pa.C.S.A. §931.

23.    Venue in this action is properly laid in Luzerne County.  See Pa.R.C.P. 1006, 2130, 2179.

5

24. The amount in controversy exceeds the amount in controversy requiring submission to arbitration.

## OPERATIVE FACTS

25. The allegations contained in the previous paragraphs of this Complaint are incorporated herein by reference as though fully set forth herein.

26. On the evening of January 30, 2021, Damian Thomas, Maurice Chapman, Al Quan Cade, Jr. and Defendant Johnson were business invitees of Defendant Bar, pursuant to an invitation to purchase and consume alcoholic beverages extended by Defendant Bar and its authorized agents, representatives, servants, workmen and/or employees, acting within the course and scope of their authority or employment.

27. On the evening of January 30, 2021, Defendant Bar, acting by and through its agents, servants, employees, owners and managers, including, but not limited to, Defendants Corporation and Owner, acting within the course and scope of their authority and/or employment, provided security services on the premises and searched patrons to ensure no one entering the establishment was carrying a firearm or other type of weapon into the establishment.

28. On the evening of January 30, 2021, Defendant Bar, acting by and through its agents, servants, employees, owners and managers, including, but not limited to, Defendants Corporation and Owner, acting within the course and scope of their authority and/or employment, negligently, carelessly and recklessly permitted Defendant Johnson to enter the establishment with a firearm.

29. On the evening of January 30, 2021, Defendant Bar, acting by and through its agents, servants, employees, owners and managers, including, but not limited to, Defendants Corporation and Owner, acting within the course and scope of their authority and/or employment,

6

negligently, carelessly and recklessly permitted Defendant Johnson to be served alcohol while visibly intoxicated.

30.     On the evening of January 30, 2021, Defendant Johnson, utilizing the firearm that Defendant Bar and its agents, servants, employees, owners and managers, including Defendants, Corporation and Owner, permitted him to have on his person, murdered two (2) innocent patrons, Damian Thomas and Maurice Chapman, and catastrophically injured Al Quan Cade, Jr. on the premises of Defendant Bar.

31.     On the evening of January 30, 2021, Defendants Bar, Corporation and Owner, knew or should have known that Defendant Johnson was carrying a firearm on his person upon entry into their establishment and that it created an unreasonable and foreseeable risk of imminent and fatal/catastrophic harm to others.

32.     At all relevant times, Defendants Bar, Corporation and Owner were not licensed to run and/or operate an after-hours bar/nightclub.

33.     At all relevant times, Defendants Bar, Corporation and Owner were conducting business in violation of temporary occupancy restrictions and curfew regulations in place at the time of the shootings.

34.     At all relevant times, Defendant Bar, Corporation and Owner were conducting business in violation of state and local orders that restricted and/or prohibited the sale and consumption of alcohol on the premises and that further restricted and/or prohibited gatherings.

35.     The negligence, carelessness, recklessness and unlawful conduct of the Defendants in this action, as more fully set forth below, jointly and severally, caused Maurice Chapman to suffer injuries, including, but not limited to the following:

    a.      respiratory failure;
    b.      hemorrhagic shock;
    c.      traumatic brain injury;

7

     d.     fractures and contusions of the face, scalp, skull, chest, pelvis, spine, and other areas;

     e.     injuries to tissues, organs, and bones;

     f.     severe emotional distress and trauma;

     g.     fear, panic and sense of impending death;

     h.     conscious physical pain, suffering and discomfort;

     i.     multi-system organ failure;

     j.     cessation of breathing;

     k.     diminution of life expectancy;

     l.     loss of past, future earnings and earning capacity;

     m.     loss of enjoyment of life and life's pleasures; and

     n.     death.

36.     The negligent, careless, reckless and unlawful acts and omissions on the part of the Defendants, jointly and severally were substantial factors in the deaths of Damian Thomas and Maurice Chapman and the catastrophic injuries to Al Quan Cade, Jr.

37.     The acts and omissions on the part of the Defendants were negligent, careless, reckless and unlawful, and increased the risk of harm to Damian Thomas, Maurice Chapman and Al Quan Cade, Jr., and were substantial factors in bringing about the deaths of Damian Thomas and Maurice Chapman and the catastrophic injuries to Al Quan Cade, Jr.

38.     All of the acts and omissions on the part of the Defendants were proximate causes of the physical and emotional harm suffered by Damian Thomas, Maurice Chapman and Al Quan Cade, Jr., leading to the pain, suffering and horrific deaths of Damian Thomas and Maurice Chapman and the pain, suffering and catastrophic injuries to Al Quan Cade, Jr.

39.     It was foreseeable that the acts and omissions on the part of the Defendants would cause the physical and emotional harm suffered by Damian Thomas, Maurice Chapman and Al Quan Cade, Jr., leading to the pain, suffering and horrific deaths of Damian Thomas and Maurice Chapman and the pain, suffering and catastrophic injuries to Al Quan Cade, Jr.

40.     As a direct result of the negligence, carelessness, recklessness and unlawful conduct of Defendants, as set forth herein, the Estate of Maurice Chapman, deceased and the sole

8

beneficiaries of his Estate, Natasha Chapman, has suffered and will continue to suffer substantial economic and non-economic injuries, damages and losses, including:

    a.      funeral and burial expenses;
    b.      costs of Estate administration;
    c.      all damages pursuant to <u>Rettger v. UPMC Shadyside</u>, including without limitation loss of the comfort, care, society, support and services;
    d.      such other injuries, damages and losses as described more fully herein.

    41.    The grievous injuries to Damian Thomas, Maurice Chapman and Al Quan Cade, Jr. were foreseeable and caused solely and exclusively by reason of the liability-producing conduct of the Defendants, jointly and/or severally, as described herein.

## COUNT I – NEGLIGENCE
## PLAINTIFF v. DEFENDANTS, BAR, CORPORATION AND OWNER

42.     Plaintiff incorporates the previous paragraphs as if fully set forth herein.

43.     Defendants owed Maurice Chapman the highest duty of care.

44.     Defendants owed a duty to conform to the standard of conduct established by law for the protection of Maurice Chapman.

45.     Defendants breached their duties.

46.     The death of Maurice Chapman was caused by the negligence of Defendants, and/or their agents, servants and employees, and were due in no manner whatsoever to any act/or failure to act on the part of Maurice Chapman.

47.     At all relevant times, Maurice Chapman reasonably and detrimentally relied upon Defendants for his safety and security and the prevention of untoward acts inside their property and in the areas directly outside their facility on the premises.

48.     The negligence and recklessness of Defendants increased the risk of harm to Maurice Chapman and were direct cause of his death.

49.     The negligence, carelessness, recklessness, intentional and/or unlawful conduct of the Defendants included, among other things, the following:

      a.    permitting known violent offenders from frequenting their establishment;

      b.    allowing Defendant Johnson access to patrons when it was foreseeable that he would perpetrate acts of violence upon them;

      c.    failing to establish, monitor and administer programs and procedures designed to protect patrons against violence and/or criminal acts;

      d.    not having and/or enforcing adequate rules, regulations and/or policies;

      e.    failing to act reasonably in dealing with patrons like Defendant Johnson and allowing him to carry a firearm and confront/injure other patrons;

      f.    failing to timely and appropriately contact police;

      g.    failing to notify responsible persons about the circumstances;

      h.    failing to prevent Defendant Johnson from entering the premises;

      i.    negligently and recklessly allowing a known violent patron to carry a firearm and confront other patrons instead of notifying the appropriate authorities;

10

j.     failing to take appropriate action to prevent harm to patrons once they have entered and/or left the premises;

k.     failing to have reasonable procedures that were designed to assist patrons presented with violent patrons and/or patrons carrying a firearm;

l.     failing to have appropriate security measures in place;

m.     failing to have appropriate and trained security personnel present;

n.     failing to follow reasonable procedures that were designed to prevent harm to patrons;

o.     failing to prevent criminal activities on and off their premises;

p.     failing to protect Maurice Chapman from the risks and consequences of allowing a violent and/or intoxicated person to have a firearm on the premises and to confront him and others;

q.     recklessly allowing an individual with a loaded firearm on the premises and to be a patron at the bar;

r.     affirmatively engaging in and/or committing such conduct specified herein in violation of the duties and obligations owed to business invitees and guests, including Maurice Chapman;

s.     failing to act with reasonable care under the circumstances;

t.     having a security force in place but then failing to properly and adequately search patrons for weapons and firearms;

u.     violating state and county occupancy and curfew ordinances in place at the time;

v.     permitting excessive patrons in the establishment in violation of ordinances, codes, regulations and law;

w.     violating state, city and county curfew laws in place at the time;

x.     violating state, city and county orders for service and consumption of alcohol;

y.     violating state, city and county orders that restricted, limited or prohibited gatherings;

z.     failing to protect Maurice Chapman by controlling the conduct of third persons on their property;

aa.     failing to protect Maurice Chapman by giving a warning adequate to enable him to avoid harm;

bb.     failing to appreciate that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of business invitees, and Maurice Chapman, specifically;

cc.     failing to appreciate that Defendants' past experience was such that Defendants should have reasonably anticipated the careless, recklessness or criminal conduct on the part of third persons;

dd.     failing to discover the dangerous conduct of third persons was occurring or was likely to occur;

ee.     failing to take reasonable care to provide appropriate precautions to prevent patrons and specifically, Maurice Chapman, to avoid possible harm;

ff.     failing to provide adequate lighting inside and outside the property;

gg.     failing to provide adequate security personnel for the subject property and surrounding areas;

hh.     failing to provide appropriate external security for the subject property in order to prevent or deter the criminal activity described herein;

11

ii.    failing to provide adequate lighting for the subject property in order to prevent or deter the criminal activity described herein;

jj.    failing to construct or design the external facilities of the subject property in order to properly maintain security *i.e.* failing to correct blind spots in order to prevent or deter the criminal activity described herein;

kk.    failing to establish or enforce policies or procedures to deter/prevent criminal activity at their property;

ll.    failing to take proper security measures to prevent the assailant from the assault, battery and shooting of Maurice Chapman;

mm.    failing to take appropriate and reasonable safety measures and precautions which would have deterred or prevented the aforesaid criminal activity;

nn.    failing to adopt, implement, and maintain adequate security measures and techniques to deter or prevent the criminal activity described herein;

oo.    failing to implement and maintain adequate security devices, equipment and systems in order to deter or prevent the criminal activity described herein;

pp.    failing to conspicuously post signs, warnings and notices of the presence of security and security patrol to deter and/or prevent harmful criminal activity and the type of criminal conduct encountered by Maurice Chapman;

qq.    failing to install conspicuous exterior/interior surveillance cameras to deter and/or prevent harmful criminal activity, including the criminal conduct encountered by Maurice Chapman;

rr.    failing to have in place a proper safety and security program to protect business invitees on and around the subject property;

ss.    failing to establish a proper and/or adequate security plan and/or vulnerability analysis;

tt.    failing to comply with statutes and industry standards applicable to Defendants;

uu.    failing to exercise due care under the circumstances when on notice of a high crime rate in and around the subject property;

vv.    failing to have a means of inspecting the inside/outside of the premises and directly communicating with property security or the police in the event of suspicious circumstance such as those described herein;

ww.    failing to have a set plan for periodic inspection of the premises of the subject property;

xx.    failing to provide safety and security personnel to properly patrol the property and, more specifically, the location of the relevant events described herein in order to prevent or deter criminal activity on the subject property;

yy.    failing to adequately train, hire and maintain qualified security personnel;

zz.    failing to eject and remove assailants from the premises prior to the criminal activity;

aaa.    failing to properly deploy its staff in order to prevent or deter the criminal activity occurring herein;

bbb.    failing to limit, control and survey access to the property;

ccc.    failing to provide persons lawfully on said premises with means to telephone or radio for assistance if faced with reason to do so;

ddd.    failing to properly notify and warn Maurice Chapman and others of previous criminal incidents in and around the subject property;

12

eee. failing to have a sufficient number of safety and security personnel in visible areas, including the location of the criminal activity, in order to deter crime and thereby protect business invitees from injury;

fff. failing to properly secure the perimeters of the premises to prevent free ingress and egress of unauthorized persons upon the subject property;

ggg. illegally operating an after-hours bar/nightclub without a license;

hhh. illegally operating a bar/nightclub in violation of state, city and country ordinances, orders and regulations;

iii. failing to perform periodic evaluations of its security measures to determine the sufficiency and effectiveness of same; and,

jjj. gratuitously undertaking to perform a security service and then failing to execute that service reasonably.

50. Defendants are each independently and vicariously liable for such acts and omissions set forth herein.

51. Defendants are liable for the actions of their agents, servants, employees, owners, and managers, including Defendants Corporation and Owner, along with other such persons not knowable to Plaintiff, but whose identities will be revealed in discovery, under the doctrines of vicarious liability and/or *respondeat superior*.

52. The acts and omissions of Defendants were the direct and proximate cause of the death of Maurice Chapman.

53. At all relevant times, and as set forth above and herein (and expressly incorporated by reference), Defendants acted wantonly and willfully, directly and indirectly, causing a violent offender to harm Maurice Chapman, exposing him and others to the risk of severe bodily injury and death, in blatant disregard of the criminal and regulatory law of this Commonwealth for the purpose and with the effect of financial gain.

**WHEREFORE,** Plaintiffs demand judgment against Defendants, individually, jointly and severally, for compensatory and punitive damages in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the prevailing arbitration limits, exclusive of prejudgment interest, post judgment interest and costs.

## COUNT II - NEGLIGENCE
## PLAINTIFF v. DEFENDANTS, BAR, CORPORATION AND OWNER

54.　　Plaintiff incorporates the previous paragraphs as if fully set forth herein.

55.　　Defendants owed the highest duty of care to Maurice Chapman, as a result of their status as a business invitee on the premises.

56.　　Defendants undertook, for consideration, providing adequate and reasonable security for Maurice Chapma., pursuant to Restatement (Second) of Torts §323.

57.　　Defendants failed to act reasonably despite their gratuitous undertaking to perform a service in violation of Restatement (Second) of Torts §323.

58.　　Defendants should have recognized that adequate security, including searching patrons for weapons/firearms, was necessary for the protection for all of its patrons, including Maurice Chapman.

59.　　Maurice Chapman was murdered as a result of Defendants' failure to exercise reasonable care to perform its undertaking to provide adequate and reasonable security.

60.　　Defendants' failure to exercise such care increased the risk of harm to its patrons, including Maurice Chapman, and/or Maurice Chapman was murdered because of his reliance upon Defendants' undertaking to provide security to him.

61.　　Defendants, through their acts and omissions, falsely reassured Maurice Chapman that Defendant Bar was safe by allowing him and others like him to patronize the establishment.

62.　　The acts and omissions of Defendants were the direct and proximate cause of the death of Maurice Chapman.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory and punitive damages in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the prevailing arbitration limits, exclusive of prejudgment interest, post judgment interest and costs.

14

## COUNT III – NEGLIGENCE
## PLAINTIFF v. DEFENDANTS, BAR, CORPORATION AND OWNER

63.     Plaintiff incorporates the previous paragraphs as if fully set forth herein.

64.     The negligence, negligence per se, common law negligence, carelessness and/or

recklessness of Defendants included, among other things, the following:

    a.    serving and/or selling alcohol, liquor, malt and brewed beverages to a visibly intoxicated person;

    b.    serving and/or selling alcohol, liquor, malt and brewed beverages to Defendant Johnson when they knew or should have known that he may cause injury to himself and/or to others as a result of his intoxicated condition;

    c.    serving and/or selling alcohol, liquor, malt and brewed beverages to Defendant Johnson causing him to undergo behavioral changes;

    d.    serving and/or selling alcohol, liquor, malt and brewed beverages to Defendant Johnson causing him to suffer impaired judgment;

    e.    continuing to serve and/or sell alcohol, liquor, malt and brewed beverages to Defendant Johnson despite his visible intoxication;

    f.    violating the statutes and laws of the Commonwealth of Pennsylvania, including, but not limited to, 47 P.S. §4-492 et seq.;

    g.    allowing intoxicated persons to frequent their premises;

    h.    failing to establish, monitor and administer programs and procedures designed to identify and assist intoxicated patrons;

    i.    allowing Defendant Johnson to frequent their premises;

    j.    encouraging Defendant Johnson to frequent their premises;

    k.    not having rules, regulations and/or policies about serving visibly intoxicated persons;

    l.    not having rules, regulations and/or policies about serving alcohol to Defendant Johnson;

    m.    not having rules, regulations and/or policies about serving visibly intoxicated individuals which were enforced;

    n.    failing to have a policy pertaining to intoxicated persons who they knew or should have known carried a concealed weapon in an impaired, intoxicated and/or inebriated condition;

    o.    failing to have adequate policies, rules and/or regulations pertaining to patrons who became visibly intoxicated as a result of the alcohol Defendants sold to them;

    p.    failing to act reasonably with Defendant Johnson once they saw his visible intoxication caused him to suffer impairment of physical capability and judgment;

    q.    failing to notify responsible persons about Defendant Johnson's condition;

    r.    failing to take appropriate action in light of Defendant Johnson's condition to prevent him from injuring himself and/or others once he left the premises;

    s.    failing to have reasonable procedures that were designed to assist intoxicated persons;

15

t.   failing to follow reasonable procedures that were designed to assist intoxicated persons;

u.   failing to act with reasonable care under the circumstances;

v.   violation of the Pennsylvania Liquor Code;

w.   violation of the rules and regulations of the Liquor Control Board of the Commonwealth of Pennsylvania;

x.   violation of 47 P.S. §4-406 (2) relating to sales by liquor licensees;

y.   operating an illegal, unauthorized after-hours establishment in violation of theapplicable laws, statutes, codes, rules and regulations; and,

z.   operating an illegal, unauthorized restaurant/nightclub in violation of the applicable laws, statutes, codes, rules and regulations.

65.   Defendants are liable for the actions of its agents, servants, employees, owners and managers under the doctrines of vicarious liability and/or *respondeat superior*.

66.   The liquor, malt and/or brewed beverages served to Defendant Johnson while he was visibly intoxicated and permitting him to carry a concealed weapon in an intoxicated condition, was the direct and proximate cause of the death of Maurice Chapman.

67.   The negligent acts and omissions of Defendants were the direct and proximate cause of the death of Maurice Chapman.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory and punitive damages in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the prevailing arbitration limits, exclusive of prejudgment interest, post judgment interest and costs.

Case 5:19-bk-04098-HWV   Doc 179   Filed 11/15/21   Entered 11/15/21 09:48:59   Desc
Main Document      Page 25 of 34

## COUNT IV – ASSAULT AND BATTERY
## PLAINTIFF v. DEFENDANT JOHNSON

68. Plaintiff incorporates the previous paragraphs as if fully set forth herein.

69. Defendant Johnson intended to put Maurice Chapman in reasonable and immediate fear of a harmful or offensive contact upon his body.

70. Maurice Chapman was put in reasonable and immediate fear of such contact.

71. Defendant Johnson intended to cause a harmful or offensive contact with the body of Maurice Chapman and/or Defendant Johnson intended to put Maurice Chapman in reasonable and immediate fear of a harmful or offensive contact upon his body.

72. Defendant Johnson's acts directly resulted in a harmful or offensive contact upon the body of Maurice Chapman.

73. Defendant Johnson intentionally, knowingly and/or recklessly attacked Maurice Chapman by using the concealed weapon that he had on his person and shooting Maurice Chapman, ultimately killing Maurice Chapman.

74. As a direct and proximate result of the foregoing assault and battery, Maurice Chapman suffered severe and catastrophic physical and psychological injuries and death.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, for compensatory and punitive damages in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the prevailing arbitration limits, exclusive of prejudgment interest, post judgment interest and costs.

## COUNT V - WRONGFUL DEATH ACT
## PLAINTIFF v. ALL DEFENDANTS

75.     Plaintiff incorporates the previous paragraphs as if fully set forth herein.

76.     Plaintiff, Natasha Chapman, as the surviving parent and Administrator of the Estate of Maurice Chapman, deceased, brings this Wrongful Death Action on behalf of the Estate under and by virtue of the Wrongful Death Act, 42 Pa.C.S.A. §8301, the applicable Rules of Civil Procedure and decisional law interpreting this Act.

77.     Under the Wrongful Death Act, Maurice Chapman left surviving his Mother, Natasha Chapman.

78.     As a result of the negligent acts and omissions of the Defendants, Maurice Chapman suffered catastrophic and permanent injuries and died, resulting in an entitlement to damages by all beneficiaries under the Wrongful Death Act.

79.     Plaintiff, Natasha Chapman, as the surviving parent and Administrator of the Estate of Maurice Chapman, deceased, claims on behalf of all of the Wrongful Death beneficiaries, the full measure of damages recoverable under and by virtue of the Wrongful Death Act and the decisional law interpreting the Act.

80.     Plaintiff, Natasha Chapman, as the surviving parent and Administrator of the Estate of Maurice Chapman, deceased, claims damages for the pecuniary losses suffered by reason of the death of Maurice Chapman, including, but not limited to damages for all medical expenses, funeral and burial expenses, and costs of estate administration necessitated by reason of the injuries which caused the death of her son, Maurice Chapman.

81.     Plaintiff, Natasha Chapman, as the surviving parent and Administrator of the Estate of Maurice Chapman, deceased, also claims damages for the loss of earnings, maintenance, support, comfort, care, society and/or other losses recognized under the Wrongful Death Act.

82.     Plaintiff, Natasha Chapman, as the surviving parent and Administrator of the Estate

18

of Maurice Chapman, deceased, further claims damages for the monetary support that Maurice Chapman could have been expected to provide to the Wrongful Death beneficiaries during his lifetime had he not died.

83.     Plaintiff, Natasha Chapman, as the surviving parent and Administrator of the Estate of Maurice Chapman, deceased, further claims the loss of the pecuniary value of the services which Maurice Chapman could have been expected to provide to the Wrongful Death beneficiaries during his lifetime had he not died.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, individually, jointly and severally, for compensatory and punitive damages in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the prevailing arbitration limits, exclusive of prejudgment interest, post judgment interest and costs.

## COUNT VI - SURVIVAL ACT
## PLAINTIFF v. ALL DEFENDANTS

84.     Plaintiff incorporates the previous paragraphs as if fully set forth herein.

85.     Plaintiff, Natasha Chapman, as the surviving parent and Administrator of the Estate of Maurice Chapman, deceased, brings this Survival Action on behalf of the Estate, under and by virtue of the Survival Act, 42 Pa.C.S.A. §8302, the applicable Rules of Civil Procedure and decisional law interpreting this Act.

86.     As a result of the negligent acts and omissions of the Defendants, Maurice Chapman suffered catastrophic and permanent injuries and died, resulting in an entitlement to damages by the Estate under the Survival Act.

87.     Plaintiff, Natasha Chapman, as the surviving parent and Administrator of the Estate of Maurice Chapman, deceased, brings this action on behalf of the Estate to recover the full measure of damages recoverable under and by virtue of the Survival Act and the decisional law interpreting the Act.

88.     On behalf of the Estate of Maurice Chapman, Deceased, Plaintiff claims damages for all economic losses to the Estate, including, but not limited to, Maurice Chapman's total estimated future earning capacity, less his personal maintenance costs.

89.     On behalf of the Estate of Maurice Chapman, Plaintiff also claims damages for Maurice Chapman's conscious physical discomfort, pain and suffering, loss of enjoyment of life and life's pleasures, and all other damages and losses recoverable under the Survival Act and the decisional law interpreting the Act.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, individually, jointly and severally, for compensatory and punitive damages in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the prevailing arbitration limits, exclusive of prejudgment interest, post judgment interest and costs.

## COUNT VII - PUNITIVE DAMAGES
## PLAINTIFF v. DEFENDANTS, BAR, CORPORATION AND OWNER

90.     Plaintiff incorporates the previous paragraphs as if fully set forth herein.

91.     Defendants were aware of the risk of harm to Maurice Chapman and acted with bad motive or with reckless indifference to the health and safety of Maurice Chapman.

92.     Defendants were grossly negligent and reckless for failing to provide adequate security despite ample prior notice of previous criminal activity in and around the subject property.

93.     Had proper security measures been taken, Maurice Chapman would not have been shot and killed.

94.     Despite this forewarning as well as the existence of simple, reasonable and effective security measures, Defendants consciously chose to ignore and disregard the foreseeable criminal acts and the proper means of prevention due, in part, to cost savings and demonstrated reckless indifference to the safety and security of the invitees that frequented their facilities.

95.     Said conduct shocks the conscience of reasonable persons within the community and entitles Plaintiff to punitive/exemplary damages.

96.     As a direct and proximate result of the foregoing outrageous, malicious, wanton, willful, oppressive, and/or reckless indifference by Defendants, Bar, Corporation and Owner to Maurice Chapman, resulting in the horrific death of Maurice Chapman.

**WHEREFORE,** Plaintiff demands judgment against all Defendants, individually, jointly and severally, for compensatory and punitive damages in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the prevailing arbitration limits, exclusive of prejudgment interest, post judgment interest and costs.

21

**VSCP**LAW  VAN NAARDEN · SPIZER
CHASE · PINTO

*Joshua Van Naarden*
_____

JOSHUA VAN NAARDEN, ESQUIRE
JOHN M. PINTO, ESQUIRE

*Attorneys for Plaintiff*

Dated:  October 22, 2021

## **VERIFICATION**

Plaintiff, Natasha Chapman, as Administrator of the Estate of Maurice Chapman, deceased, hereby verifies that the within Civil Action Complaint is based on first-hand information and on information furnished to counsel and obtained by counsel in the course of this lawsuit. The language of the document is that of counsel and not of the affiant. To the extent that the contents of the document are based on information furnished to counsel and obtained by counsel during the course of this lawsuit, the affiant has relied upon counsel in taking this verification. All statements are founded upon reasonable belief. This verification is made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

_____
Natasha Chapman, as Administrator of the Estate of
Maurice Chapman, deceased

Dated: 10/18/2021

**EXHIBIT A**

# REGISTER OF WILLS
## Certificate of Grant of Letters of Administration

File No.: **4021-2347**

ESTATE OF: **MAURICE CHAPMAN**

Social Security No.: **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**

WHEREAS, **MAURICE CHAPMAN** late of **WILKES BARRE CITY**, died on the **31st** day of **January, 2021** and

WHEREAS, the grant of letters of administration is required for the administration of the estate.

THEREFORE, I, **Joan Hoggarth**, Register of Wills in and for the County of **Luzerne**, in the Commonwealth of Pennsylvania, have this day granted **Letters Of Administration** to NATASHA CHAPMAN, AKA NATASH CHAPMAN who has duly qualified as Administratrix of the estate of the above named decedent and has agreed to administer the estate according to law, all of which fully appears of record in my Office of the Register of Wills of Luzerne County, Pennsylvania.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of my Office on the **15th** day of **October, 2021.**

*Joan Hoggarth*

Register of Wills